UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

JEREMY TRUJILLO,

        Plaintiff,

v.

WALMART INC.,

        Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff, Jeremy Trujillo, by and through his attorneys, HKM Employment Attorneys, LLP, for his Complaint & Jury Demand against Walmart Inc. ("Defendant" or the "Company") states and alleges as follows:

**PRELIMINARY STATEMENT**

1.    This is an employment discrimination case arising from Defendant's failure to accommodate, discrimination toward and wrongful termination of Plaintiff because of his amputee status, in violation of the Americans with Disabilities Act ("ADA").  Put simply, Defendant terminated Plaintiff because he was a recent amputee that requested and used the accommodation of occasional time off work for medical challenges related to adjusting to his new prosthetic. Plaintiff's approved absences during a three-month period were changed to unexcused absences and used to justify Defendant's discriminatory and/or retaliatory termination of Plaintiff's employment on September 23, 2018.

## PARTIES

2. At all times relevant to this Complaint, Plaintiff is and was a resident of Colorado.

3. Defendant Walmart Inc. is a Delaware corporation with a principal street address located at 708 SW 8th Street, Bentonville, Arkansas 72716.

## JURISDICTION AND VENUE

4. Plaintiff incorporates by reference the above paragraphs as though set forth separately and fully herein.

5. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and based on diversity of citizenship under 28 U.S.C. § 1332.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

7. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

8. Plaintiff filed his Charge of Discrimination Number 32A-2019-00104 and FE2019807284 with the Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division ("CCRD"), respectively, for disability discrimination and retaliation on November 5, 2018.  Plaintiff was issued a Notice of Right to Sue with respect to the above Charge Numbers and Plaintiff has filed the present action within ninety (90) days of receipt of same.

9. Plaintiff has met all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS

10.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

11.     Plaintiff, as an amputee, is an individual with a disability which, without ameliorative devices, substantially limits one or more major life activity, including standing and walking.

12.     Plaintiff began working for Defendant on or about February 16, 2005, as a Cashier at Walmart's Store Number 1308 in Littleton, Colorado.  Plaintiff resigned from his employment on April 16, 2014 and was rehired as a Produce Sales Associate on August 11, 2016 at Store Number 3048 in Denver, Colorado.  Plaintiff was terminated from his employment on August 16, 2016 because he was not available for work.  Plaintiff was rehired at Store Number 1308 in Littleton, Colorado on September 27, 2017 as a Sales Associate.

13.     In or around November 2017, Plaintiff began suffering from an ultimately irreversible staph infection of his foot.  Plaintiff accordingly requested and was approved the reasonable accommodation of leave related to same.  After various unsuccessful therapeutic and surgical treatments, Plaintiff had little choice other than below-the-knee amputation in January 2018.  Plaintiff was fitted for a prosthetic device in March 2018 and released to return to work without restrictions on April 22, 2018.

14.     When Plaintiff returned to work, his supervisor, Vanessa Towner, asked Plaintiff if he was able to walk and perform his job duties with his new prosthetic.  Plaintiff replied in the affirmative.

15.     After a few weeks of working while using his new prosthetic, Plaintiff's started

experiencing leg swelling and discomfort. Plaintiff's doctor advised him that this was to be expected, but that he would work less hours or take occasional days off when the discomfort became intolerable, particularly during his rehabilitation phase.

16. Plaintiff asked Ms. Towner for the reasonable accommodation of time off work as needed to adjust to his new prosthetic.

17. Ms. Towner was cooperative and told Plaintiff that it would be fine for him to work less hours and take time off as needed for issues associated with his new prosthetic or attend doctor's appointments.

18. At no time did Ms. Towner ask Plaintiff to fill out paperwork or provide medical documentation regarding his requested accommodation.

19. Plaintiff also told Ms. Towner that he could work using a wheelchair if his new prosthetic ever caused him to miss too much work. Ms. Towner never followed up with respect to Plaintiff's suggestion that he could use a wheelchair to work on a periodic basis.

20. At no time prior to Plaintiff's termination did anyone working for Defendant tell Plaintiff that his requests for occasional time off work related to his new prosthetic had become an undue burden for Defendant.

21. Plaintiff accordingly periodically requested and used the reasonable accommodation of occasional time off work related to challenges with his new prosthetic.

22. During Plaintiff's employment, Plaintiff could access his attendance record using Defendant's tracking system to make sure that his use of time off work related to his prosthetic was classified as approved. When Plaintiff requested to leave work early due to aggravated symptoms related to his new prosthetic, or when he requested the day off due to his prosthetic or

a doctor's appointment, Defendant's tracking system would often first classify his approved time off as an unexcused absence. Upon information and belief, Ms. Towner would then routinely reverse the classification from unexcused to excused when she reviewed the attendance records.

23. Throughout his employment with Defendant, Plaintiff routinely accessed his attendance record to ensure that any time off he had taken related to his prosthetic was classified correctly as being approved.

24. In July 2018, Plaintiff also contacted Defendant's third-party benefits provider, Sedgwick, to request intermittent FMLA leave due to symptoms related to his new prosthetic.

25. On July 25, 2018, Plaintiff was denied FMLA leave because he had not been an employee for a full year.

26. Plaintiff continued to have periodic issues related to adapting to his new prosthetic. For example, in August 2018, Plaintiff requested and received permission to leave work early when his prosthetic fell off completely at work. In September 2018, Plaintiff additionally requested time off work for soreness and swelling that resulted in a visit to the emergency department where he was treated for skin sloughing from the prosthetic device.

27. Throughout this time period, Plaintiff was never warned or given any feedback that his approved absences related to his prosthetic were considered a performance issue; or that the modest scheduling accommodations he was requesting and using were an undue burden.

28. Around mid-September 2018, Defendant terminated several employees at Plaintiff's store for having too many absences. Upon information and belief, Defendant allows up to nine unexcused absences during any rolling six-month period.

29. On September 23, 2018, Plaintiff went to the personnel office to check his

attendance record and noticed that absences that were previously classified as excused were suddenly classified as unexcused.

30. Later that afternoon, an assistant manager of Defendant's asked Plaintiff to come to a meeting with Ms. Towner. Ms. Towner explained that, due to Plaintiff's accrual of 14 purportedly unexcused absences, Plaintiff was being terminated.

31. Ms. Towner also told Plaintiff that he had not been on the initial list of terminations due to attendance until Defendant's Personnel Manager at the store location had changed at least seven of his excused absences to unexcused absences.

32. Defendant's Personnel Manager, Wanda (last name unknown), knew about Plaintiff's status as an amputee, and further knew about Plaintiff's requests for and use of accommodations related to his prosthetic.

33. Ms. Towner also expressed surprise because she said Plaintiff had not been a problematic employee. Ms. Towner encouraged Plaintiff to reapply in six months.

34. Another Assistant Manager of Defendant's, Naraj (last name unknown), also expressed surprise, stating that Plaintiff was a good employee and that he did not agree with Plaintiff's termination.

35. According to Exhibit 11 of Defendant's Position Statement submitted to the Colorado Civil Rights Division, seven of Plaintiff's purportedly unauthorized absences from work were classified as "Leave of absence denied – unauthorized." Upon information and belief, each absence classified as "Leave of absence denied – unauthorized" were previously classified as excused until the week of Plaintiff's sudden termination.

36. If Defendant had not retroactively changed Plaintiff's seven previously-excused

absences to the classification, "Leave of absence denied – unauthorized", Plaintiff would not have had accrued enough absences to justify Defendant's termination of his employment pursuant to its own policy, which allows up to nine unexcused absences during any six-month period.

**FIRST CLAIM FOR RELIEF**
**(Disability Discrimination and Failure to Accommodate in Violation of Section 102(a) and (b)(5)(A) of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112(a) and (b)(5)(A))**

37. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

38. Plaintiff is a disabled person within the meaning of the ADA.

39. Plaintiff's amputee status is a physical impairment which, without ameliorative devices such as his prosthetic and a wheelchair, substantially limits one or more major life activities as compared to the general population. For example, Plaintiff's amputee status substantially limits Plaintiff's ability to stand and walk as compared to the general population.

40. Though Plaintiff suffered from a disabling medical condition at the time of his termination, Plaintiff was qualified for his job and capable of performing the essential functions of his position with or without reasonable accommodations.

41. At the time of Plaintiff's termination, Plaintiff was also regarded as being disabled by Defendant.

42. Since at least September 23, 2018, if not earlier, Defendant discriminated against Plaintiff because of his disability by denying Plaintiff reasonable accommodation and failing to engage in an interactive process calculated to develop a reasonable accommodation for Plaintiff prior to terminating his employment. Such reasonable accommodation would have permitted Plaintiff to perform the essential functions of his position and would not have worked any undue

hardship on Defendant.

43. For instance, Plaintiff requested the accommodation of being allowed occasional time off from work while adjusting to his new prosthetic or to attend medical appointments.

44. Defendant effectively denied Plaintiff's request of being allowed occasional time off from work by retroactively classifying Plaintiff's use of time off work related to his prosthetic as unexcused absences and terminating his employment for requesting and/or using an accommodation approved by Plaintiff's supervisor.

45. Allowing Plaintiff occasional time off work while adjusting to his new prosthetic would not have caused an undue hardship on Defendant.

46. On or about September 23, 2018, Defendant further discriminated against Plaintiff because of his actual and/or perceived disability by terminating Plaintiff's employment, in violation of the ADA.

47. The effect of Defendant's discriminatory practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his actual and/or perceived disability, and/or Defendant's denial of Plaintiff's request for reasonable accommodation of his actual and/or perceived disability.

48. Defendant's above-described conduct was intentional.

49. Defendant's above-described conduct was done with malice or reckless indifference to Plaintiff's federally-protected rights.

50. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages,

economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

**SECOND CLAIM FOR RELIEF**
**(Retaliation in Violation of the ADA, as amended, 42 U.S.C. § 12203(a))**

51. Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

52. Since at least May 29, 2018, Plaintiff made requests for reasonable accommodations related to his actual and/or perceived disability. In making these requests, Plaintiff was engaging in activity protected under the ADA.

53. Defendant retaliated against Plaintiff after he engaged in the above-described protected activity.

54. Plaintiff further used an accommodation related to his disabling medical condition during his employment with Defendant. Specifically, Plaintiff requested and was approved to go home early or take occasional time off work related to challenges adjusting to his new prosthetic on or about the following days: May 29, 2018; June 19, 2018; June 20, 2018; June 27, 2018; July 3, 2018; July 8, 2018; July 9, 2018; July 11, 2018; July 25, 2018; July 29, 2018; July 30, 2018; August 7, 2018; August 14, 2018; August 20, 2018; August 28, 2018; August 29, 2018; September 4, 2018; and September 21, 2018. In using the approved accommodation of being allowed to leave work early or take occasional time off work related to challenges adjusting to his new prosthetic, Plaintiff was engaging in activity protected by the ADA.

55. Defendant retaliated against Plaintiff after he engaged in the above-described protected activity.

56. More specifically, Defendant retroactively classified the following previously authorized time off work related to Plaintiff's prosthetic as unexcused absences to justify

Plaintiff's retaliatory termination: June 20, 2018; June 27, 2018; July 3, 2018; July 29, 2018; July 30, 2018; August 29, 2018; and September 4, 2018.  Plaintiff accordingly suffered one or more materially adverse job consequences intentionally imposed by Defendant, including refusing to accommodate Plaintiff; refusing to engage in an interactive process with Plaintiff concerning his requested accommodation; and terminating Plaintiff's employment.  These consequences are of the type that would tend to discourage similarly situated employees from requesting and/or using accommodations related to a protected medical condition.

57. A causal connection exists between Plaintiff's protected activities and Defendant's materially adverse actions, i.e., Defendant refused to accommodate and refused to engage in the interactive process with Plaintiff and terminated his employment because he used and/or requested reasonable accommodations related to his disabling medical condition.

58. Defendant's above-described conduct was intentional.

59. Defendant's above-described conduct was done with malice or with reckless indifference to Plaintiff's federally-protected rights.

60. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience, and he is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to those for past and future

pecuniary and non-pecuniary losses, garden-variety emotional distress, pain, inconvenience, mental anguish, and loss of enjoyment of life;

      B.      Punitive damages for all claims as allowed by law;

      C.      Attorneys' fees and costs of this action;

      D.      Pre-judgment and post-judgment interest at the highest lawful rate; and

      E.      Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 3rd day of September 2019.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: *s/ Shelby Woods*
    Claire E. Hunter (39504)
    Shelby Woods (48606)
    HKM Employment Attorneys LLP
    730 17th Street, Suite 750
    Denver, Colorado 80202
    chunter@hkm.com
    swoods@hkm.com
    *Attorneys for Plaintiff Jeremy Trujillo*